# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DAVID TREJO-LOZANO,

      Petitioner,

-vs-                                Case No.   8:18-cv-2206-WFJ-JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). Respondent filed a response opposing the petition (Doc. 17), to which Petitioner replied (Doc. 20). Upon consideration, the petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

      Petitioner was convicted of four counts of lewd and lascivious molestation upon a child less than 12 years of age and sentenced to life in prison (Doc. 17-2, Exs. 5-6). The convictions and sentences were affirmed on appeal on June 8, 2011 (*Id.*, Ex. 10).

      On February 27, 2012, Petitioner filed a post-conviction motion under Rule 3.850, Florida Rules of Criminal Procedure, in which he alleged five claims of

ineffective assistance of trial counsel (*Id.*, Ex. 12, docket pp. 29-35). The state post-conviction court denied grounds one and five and ordered the State to respond to grounds two, three, and four (Doc. 17-2, Ex. 13). After the State filed its response (*id.*, Ex. 14), the court denied ground two and struck ground four with leave to amend (*Id.*, Ex. 15). Petitioner filed an amended Rule 3.850 motion in which he amended ground four (*Id.* Ex. 16). The court denied ground four and granted an evidentiary hearing on ground three (*Id.*, Ex. 17). The evidentiary hearing was held on December 17, 2014 (*Id.*, Ex. 18). On January 27, 2015, the court issued a final order denying ground three (*Id.*, Ex. 19).

Petitioner did not file a timely appeal. However, he filed a Petition for Belated Appeal on June 4, 2015 (*Id.*, Ex. 20). After the petition was amended (*id.*, Ex. 22), it was granted by the appellate court on August 10, 2015 (*Id.*, Ex. 23). The denial of Petitioner's Rule 3.850 motion was affirmed on appeal (Id., Ex. 26). The appellate court mandate issued on April 27, 2018 (*Id.*, Ex. 27).

On August 31, 2018, Petitioner filed his federal habeas petition in this Court (Doc. 1) in which he alleges five grounds for relief:

1. The state trial court erred in admitting Petitioner's confessions because they were coerced by Ms. Martinez (the ex-wife of Petitioner and the victim's mother), who was acting as an agent for the police and told Petitioner she still had feelings for him and would reconcile their relationship if he confessed;

2. Trial counsel was ineffective in failing to move to suppress Petitioner's confessions to Ms. Martinez because they were coerced;

3. Trial counsel was ineffective in failing to move to suppress Petitioner's videotaped confession to law enforcement because it was obtained in violation of his *Miranda* rights;

4. Trial counsel was ineffective in failing to move to suppress Petitioner's videotaped confession because his intoxication from cocaine rendered his confession involuntary; and

5. Trial counsel was ineffective in failing to hire a forensic psychologist to review reports and a videotaped interview of the victim and provide testimony that the victim's allegations were influenced by Ms. Martinez or Ms. Garza.

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889–90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is

highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable

application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id.* at 687–88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689–90.

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. Exhaustion and Procedural Default

The writ of habeas corpus cannot be granted unless the petitioner has exhausted all available state court remedies. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012) (citing 28

U.S.C. § 2254(b),(c)).[1] Exhausting state remedies requires a petitioner to "fairly present" his claim in each appropriate state court "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) and *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). The petitioner first must have "fairly presented" both the facts and substance of the constitutional federal habeas claim to the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A state prisoner properly raises a federal constitutional claim by citing the federal source of law, or a case deciding the claim on federal grounds. *Howell v. Mississippi*, 543 U.S. 440, 443–44 & n.2 (2005). The state prisoner must have presented the same claim to the state courts as the one being raised in the federal habeas petition. *Picard*, 404 U.S. at 276.

Federal habeas review may be precluded in certain circumstances. If the claim was raised in state court but the state court found the claim was defaulted on state procedural grounds, the claim is procedurally barred from habeas review. *Coleman*, 501 U.S. at 729–30. Under the procedural default doctrine, a claim is barred if the claim was not raised in state court and "the court to which the petitioner would be required to present [the] claims in order to meet the exhaustion requirement would

---

[1] *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.").

now find the claims procedurally barred." *Id*. at 735 n.1. To avoid a procedural bar, a petitioner must show "either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." *Lucas*, 682 F.3d at 1353; *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

## III. ANALYSIS

### A. The petition is timely

Respondent moves to dismiss the petition as time-barred under 28 U.S.C. § 2244(d), arguing that more than one year passed after Petitioner's judgment became final (Doc. 17, pp. 5-9).

The AEDPA establishes a one-year statute of limitations in which a state prisoner may file a federal habeas petition. 28 U.S.C. § 2244(d)(1). *Lawrence v. Florida*, 549 U.S. 327, 331 (2007). The limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . ." § 2244(d)(1)(A). And "[t]he time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." § 2244(d)(2).

Petitioner's judgment of conviction was affirmed by the appellate court on June 8, 2011. Therefore, for purposes of § 2244(d), the judgment became final ninety (90) days later on September 6, 2011. *See Nix v. Sec'y for Dep't of Corr.*, 393 F.3d 1235, 1236–37 (11th Cir. 2004) (holding that Florida prisoner's conviction became "final"

8

for AEDPA purposes on date the 90–day period for seeking certiorari review in Supreme Court expired); Supreme Court Rules 13(1) and (3) (for a petition for certiorari to be timely, it must be filed within 90 days after entry of the judgment or order sought to be reviewed). Thus, Petitioner's AEDPA statute of limitations period commenced on September 7, 2011. He therefore had until September 7, 2012, in which to file a timely federal habeas petition under § 2254. His habeas petition was filed on August 31, 2018, approximately 6 years later. Accordingly, his petition is untimely unless the limitations period was tolled for a sufficient period by properly filed state court post-conviction applications.

After the limitations period commenced on September 7, 2011, it was tolled 173 days later on February 27, 2012, when Petitioner filed his Rule 3.850 motion. The limitations period remained tolled until February 26, 2015, 30 days after the Rule 3.850 motion was denied on January 27, 2015. *See Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006) (a post-conviction application remains pending until the time to seek appellate review expires if a petitioner does not file a notice of appeal).

Another 98 days of the limitations period elapsed before it was tolled again on June 4, 2015, when Petitioner filed his petition for a belated appeal of the order denying his Rule 3.850 motion.[2] The limitations period remained tolled until April

---

[2] After the petition for belated appeal was amended (Doc. 17-3, Ex. 22)), it was granted (*Id.*, Ex. 23). Accordingly, the AEDPA's limitations period was tolled while the petition for

9

27, 2018, when the appellate court mandate issued after the order denying the Rule 3.850 motion was affirmed. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) ("The AEDPA clock resumes running when the state's highest court issues its mandate disposing of the motion for post-conviction relief."). As of that date, Petitioner had 94 (i.e., 365-173-98=94) days remaining within which to file a timely federal habeas petition. The limitations period ran unabated for those 94 days before expiring on July 30, 2018. Petitioner filed his federal habeas petition on August 31, 2018, 32 days after the federal limitations period expired. Accordingly, his federal habeas petition is time-barred unless he can demonstrate the applicability of equitable tolling, *see Holland v. Florida*, 560 U.S. 631, 645 (2010), or that he is actually innocent of the crime for which he was convicted. *See McQuiggin v. Perkins*, 569 U.S. 383 (2013).

Petitioner does not contend that he is actually innocent of the crimes for which he was convicted. He does, however, assert entitlement to equitable tolling.

The limitations period under § 2244(d) is subject to equitable tolling. *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004). Section 2244 "permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence.'" *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271

---

belated appeal and the belated appeal were pending. *See Williams v. Crist*, 230 F. App'x 861, 867 (11th Cir. 2006) (a successful petition for belated appeal tolls the statute of limitations).

10

(11th Cir. 1999) (per curiam)). Equitable tolling only applies, however, where the litigant satisfies his burden of establishing that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way and prevented timely filing. *Arthur v. Allen*, 452 F.3d 1234, 1252 (11th Cir. 2006) (petitioner must show both extraordinary circumstances and diligence).

Petitioner contends that he is entitled to equitable tolling because: 1) he did not receive the January 27, 2015 order denying his Rule 3.850 motion until May 15, 2015; and 2) he was unable to prepare a timely federal habeas petition since he was without access to his legal documents and unable to see and read printed documents due to a medical condition affecting his eyes between March 20, 2018, and August 1, 2018 (See Doc. 1, docket pp. 14–15; Doc. 20). According to Petitioner, he did not receive the January 27, 2015 order denying his Rule 3.850 motion because it was mailed to the Central Florida Reception Center ("CFRC") (a Florida Department of Corrections institution) rather than the Manatee County Jail, where he had been transferred for the December 2014 evidentiary hearing on his Rule 3.850 motion (Doc. 17-3, Ex. 20, docket pp. 243–44). CFRC returned the order to the state court because Petitioner was not in the custody of the Department of Corrections when the order was received on January 29, 2015 (*Id.*, docket pp. 244, 249).

Because Petitioner had not received notice of the final disposition of his Rule 3.850 motion, he sent a notice of inquiry to the clerk of the trial court in May 2015 (*Id.*, docket p. 244). On May 15, 2015, Petitioner received a copy of the January 27,

2015 order denying his Rule 3.850 motion (*Id.*). Petitioner filed a petition for belated appeal on June 4, 2015 (*Id.*, docket p. 242), and an amended petition for belated appeal on June 24, 2015 (*Id.*, Ex. 22, docket p. 253). The petition was granted (*Id.*, Ex. 23).

Given the record, the Court finds that Petitioner is entitled to equitable tolling from February 26, 2015, when the time to seek appellate review of the January 27, 2015 order denying his Rule 3.850 motion expired, through May 15, 2015, when Petitioner received his copy of that order. The state court mailing the January 27, 2015 order to the wrong institution, and CFRC returning the order to the state court, was an extraordinary circumstance beyond Petitioner's control that prevented him from knowing the disposition of the Rule 3.850 proceeding and filing a timely notice of appeal. And Petitioner acted with reasonable diligence in sending a notice of inquiry to the state court less than 4 months after the final order was issued and in filing a petition for belated appeal 20 days after receiving a copy of the order. *See Drew v. Dep't of Corr.*, 297 F.3d 1278, 1288 (11th Cir. 2002) ("A lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition.") (citations omitted), *cert. denied*, 537 U.S. 1237 (2003); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.) (per curiam) (finding that equitable tolling may apply where petitioner, despite his diligence, did not receive notice of

denial of state post-conviction relief for four months), *reh'g granted in part*, 223 F.3d 797 (5th Cir. 2000).

Giving Petitioner the benefit of equitable tolling, only 20 days of the limitations period (rather than 98) elapsed between February 26, 2015, when the time to appeal the order denying the Rule 3.850 motion expired, and June 4, 2015, when the petition for belated appeal was filed. Therefore, Petitioner had until October 16, 2018 (rather than July 30, 2018), to timely file his federal habeas petition. Accordingly, Petitioner's petition, filed August 31, 2018, is timely.[3]

## B. Petitioner's claims are procedurally barred or fail on the merits

### 1. Grounds One, Two, and Five are procedurally barred

Respondent argues that Grounds One, Two, and Five should be dismissed as procedurally barred from federal habeas review. The Court agrees.

### Ground One

Petitioner contends that the state trial court erred in admitting his confessions to Ms. Martinez because she coerced the confessions while acting as an agent for the police. This claim was raised in state court in Petitioner's direct appeal (Doc. 17-2, Ex. 8). In response, the State argued both that the claim was not preserved for

---

[3] Because the petition is timely with the benefit of equitable tolling between February 26, 2015, and May 15, 2015, the Court need not address Petitioner's remaining contention that he likewise is entitled to equitable tolling between March 20, 2018, and August 1, 2018.

appellate review because it was never raised in the trial court and without merit (*Id.*, Ex. 9). The appellate court affirmed Petitioner's convictions without a written opinion (*Id.*, Ex. 10).

This claim is procedurally barred from federal habeas review because it was procedurally defaulted in the state appellate court, having not been properly preserved for review. In Florida, "[f]or an issue to be preserved for appeal, it must be presented to the lower court, and the specific legal argument or ground to be argued on appeal must be part of that presentation." *Doorbal v. State*, 983 So. 2d 464, 492 (Fla. 2008). Petitioner did not present the argument he makes here, and that he made in the state appellate court, to the state trial court. The state appellate court affirmed without opinion and this Court "may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this [issue]. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar." *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993).

"[C]onsistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court," the Supreme Court has held that, "when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal

review." *Cone v. Bell*, 556 U.S. 449, 465 (2009). Because Petitioner failed to present his claim to the state trial court, the denial of the claim by the state appellate court is presumed to rest on the independent and adequate state ground of lack of preservation, and therefore this claim is procedurally barred.

Petitioner fails to demonstrate cause for the default and prejudice. And he cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Petitioner satisfies neither exception to procedural default, Ground One is procedurally barred from federal review.

Even if Ground One were not procedurally barred, it would fail on the merits. Petitioner has presented a federal constitutional claim regarding Ground One in neither this Court nor state court. Rather, he has presented a claim of trial court error under Florida law. Specifically, on direct appeal he argued that the trial court erred in admitting his confessions to Ms. Martinez because they were untrustworthy under Fla. Stat § 92.565 (Doc. 17-2, Ex. 8). A claim that the admission of evidence in a state criminal trial failed to conform with state law requirements is not cognizable on federal habeas review. *Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989). Accordingly, Ground One does not warrant federal habeas relief.

**Grounds Two and Five**

15

In Ground Two, Petitioner contends that counsel was ineffective in failing to move to suppress his confessions to Ms. Martinez. In Ground Five, he contends that counsel was ineffective in failing to hire a psychologist as an expert witness to challenge the victim's allegations. Although Petitioner raised these claims in his Rule 3.850 motion in state court (see Doc. 17-2, Ex. 12), he failed to raise them on appeal from the denial of the Rule 3.850 motion (see Doc. 17-3, Ex. 24).

To obtain appellate review of these claims in state court, Petitioner had to raise and address the merits of the issues in his Initial Brief. See Rule 9.141(b)(3)(C), Fla. R. App. P. He therefore failed to invoke Florida's established appellate review process as to these claims. Consequently, he failed to exhaust his state remedies regarding these claims. *See Cortes v. Gladish*, 216 F. App'x. 897, 899–900 (11th Cir. 2007) (unpublished) ("had Cortes received an evidentiary hearing [on issues raised in his 3.850 motion], his failure to address issues in his appellate brief would constitute a waiver"); *Khianthalat v. Sec'y, Dep't of Corr.*, 2017 WL 9285601, at *4 (11th Cir. Dec. 20, 2017) (concluding that ineffective assistance of trial counsel claims raised in state Rule 3.850 motion but not argued on post-conviction appeal were procedurally barred from federal habeas review).

Any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, because the Florida rule requiring submission of an appellate brief bars Petitioner from returning to state court to challenge the denial of

these claims in a second appeal of the denial of the Rule 3.850 motion. See Rule 9.141(b)(3)(C), Fla.R.App.P. And any further attempt to raise the claims in another Rule 3.850 motion would be subject to dismissal as untimely and successive. See Rule 3.850(b), (h), Fla.R.Crim.P.

Petitioner's failure to assert these claims on post-conviction appeal results in the default of these claims. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (stating that exhaustion of a claim raised in a Rule 3.850 motion includes an appeal from the denial of the motion). He makes none of the requisite showings to excuse his procedural default. The default therefore bars federal habeas review of Grounds Two and Five.

### 2. Grounds Three and Four fail on the merits

### Ground Three

Petitioner contends that counsel was ineffective in failing to move to suppress the videotaped confession he gave to law enforcement after he was arrested and received his *Miranda* warnings.[4] He argues that his rights under the Fifth Amendment were violated because he confessed only after officers confronted him with the confessions he previously made to Ms. Martinez. Since his confessions to Ms. Martinez were obtained illegally, Petitioner argues, his confession to the police

---

4 *See Miranda v. Arizona*, 384 U.S. 436 (1966) (holding that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during "custodial interrogation" without a prior warning).

likewise was obtained illegally because he believed the *Miranda* warnings were "superfluous" or "worthless" after the police already were aware of his confessions to Ms. Martinez.

This claim was raised in Claim Two of Petitioner's Rule 3.850 motion (Doc. 17-2, Ex. 12, docket pp. 423-29). In denying the claim, the state post-conviction court stated:

> The Defendant argues that his trial counsel was ineffective for failing to file a motion to suppress his videotaped confession, which he argues was illegal because, after being confronted with the statements he made during conversations with the victim's mother, Angela Martinez, which were monitored by law enforcement, he felt that his *Miranda* warnings were "superfluous" or "worthless." He claims that because his waiver of rights under *Miranda* was made after he made a confession which law enforcement obtained illegally, his post-*Miranda* statements should not have been admitted as evidence against him under the "fruit of the poisonous tree" doctrine.
>
> In support of his argument, the Defendant cites to *Missouri v. Seibert*. In *Missouri v. Seibert*, the U.S. Supreme Court found that the law enforcement practice of a "two prong" interrogation in which law enforcement first withholds *Miranda* warnings until after a confession is made and, second, provides the warnings, obtains a waiver and then uses subsequent incriminating statements as evidence against a defendant to be unconstitutional. Recognizing that the threshold inquiry in reviewing such a practice is whether the *Miranda* warnings reasonably convey the constitutional rights, the Court explained:
>
>> [W]hen *Miranda* warnings are inserted during *coordinated and continuing* interrogation, they are likely to mislead and depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them. By the same token, it would ordinarily be unrealistic to treat two spates of *integrated and proximately conducted questioning* as independent interrogations subject to independent

evaluation simply because *Miranda* warnings formally punctuate them in the middle.

*Missouri v. Seibert* is not analogous to the present case because no two-prong interrogation by law enforcement occurred here. The Defendant was not being interrogated by law enforcement at the time he made the first statements, and the conversations with Angela Martinez were not conducted when the Defendant was in custody. Only later, after being taken into custody and after waiving his rights under *Miranda*, did he make the inculpatory statements to law enforcement which were admitted at the trial. The conversations with Martinez were not in any way integrated or continuous with the post-*Miranda* questioning by law enforcement.

The rights that a *Miranda* warning seeks to protect are not triggered unless a defendant is facing custodial interrogation by law enforcement. "For *Miranda* purposes, custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." "The standard for "custody" is whether, based on the totality of the circumstances, a reasonable person would feel that his freedom of movement has been restricted to a degree associated with an actual arrest." In the present case, although law enforcement listened to Martinez's phone and in-person conversations with the Defendant, and the conversations were conducted by Martinez for the purpose of getting incriminating statements from the Defendant, he was not in custody at the time because these conversations occurred before he was picked up by law enforcement. Because he was not in custody when he made statements to Martinez, the statements were not illegally coerced.

"Under the 'fruit of the poisonous tree doctrine', the exclusionary rule bars the admission at trial of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of the police illegality." Because the statements made to Martinez were not illegally obtained, there was no basis for suppression of the video tape of the post *Miranda* statements to law enforcement based upon this doctrine. The Defendant had been advised of his constitutional rights, and he waived those rights both orally and in writing before he made the incriminating statement to law enforcement.

Moreover, the Defendant claims that upon his arrest, he was "immediately confronted with statements that he had made to his ex-wife during several 'controlled' phone calls and on in person discussion during which she wore a 'wire' at the direction of law enforcement. As the State pointed out in its Response, the detectives who conducted his interview recorded the entire interview, and they never confronted him with statements he made to his wife during the recorded conversations. Detective Bliss only told him that some allegations came out when the daughter was at the hospital and asked him if he spoke to his wife, and the Defendant admitted that he spoke to his wife and that she had explained what happened. His statements during the recorded conversations were never brought up by law enforcement and as a result, the law enforcement officers would not have been found to have used the statements to undermine the protections of the *Miranda* waiver.

Because a motion to suppress the videotaped confession based upon this argument would have been denied, the Defendant was not prejudiced by trial counsel's failure to file such a motion. Therefore, this Ground Two shall be denied as conclusively refuted by the record.

(Doc. 17-3, Ex. 15, docket pp. 164–67) (footnotes omitted) (emphasis in original).

The state appellate court affirmed the denial of the Rule 3.850 motion without a written opinion (*Id.*, Ex. 26).

Petitioner's claim relies on the faulty premise that his admissions to Ms. Martinez were obtained unconstitutionally. To the extent that he argues his rights under the Fifth Amendment were violated because he did not receive *Miranda* warnings before confessing to Ms. Martinez, *Miranda* is inapplicable to this claim because Petitioner does not allege or show that he was in custody during his conversations with Ms. Martinez. *See United States v. Young,* 377 F. App'x 965, 968 (11th Cir. 2010) ("*Miranda* only applies where 'a person in custody is subjected to either express questioning or its functional equivalent.'") (quoting *Rhode Island v.*

20

*Innis*, 446 U.S. 291, 300–01 (1980)); *United States v. Street*, 472 F.3d 1298, 1310 (11th Cir. 2006) ("[A] person is in 'custody' for *Miranda* purposes only when there is a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'") (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

Moreover, *Miranda* warnings were not required even if, as Petitioner argues, Ms. Martinez was working as an agent for the police because Petitioner does not allege that when he confessed to Ms. Martinez, he believed that she was working with the police. *See Illinois v. Perkins*, 496 U.S. 292, 296 (1990) (police officer working undercover and representing himself to be a fellow prisoner does not have to give *Miranda* warnings to preserve the admissibility of a confession).

To the extent that Petitioner contends his rights under the Fourteenth Amendment were violated because Ms. Martinez coerced him into confessing by telling him that if he admitted what he had done they could reconcile their relationship and she would not inform the police, the contention is without merit. "[A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession." *Jackson v. Denno*, 378 U.S. 368, 376 (1964). "The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." *Leon v. Wainwright*, 734 F.2d 770, 772 (11th Cir. 1984) (internal quotation marks omitted).

"This means that it 'must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'" *Id*. (quoting *Bram v. United States*, 168 U.S. 532, 542-43 (1897)). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). A confession is involuntary if the suspect's "will was overborne in such a way to render his confession the product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991).

Petitioner has failed to demonstrate that his will was overborne by Ms. Martinez. Ms. Martinez testified that she told Petitioner she still had feelings for him and that they could "work it out" if he told her the truth (Doc. 17-2, docket pp. 155-56). She denied, however, telling him they could reconcile their relationship if he told her he "did it." (*Id.*, p. 155). Nor is there any indication from the trial transcript that she promised Petitioner she would reunite with him if he confessed (*Id.*, docket pp. 138-65).

In determining whether Petitioner's will was overborne and confessions involuntary, the Court must consider the totality of the circumstances. *Hubbard v. Haley*, 317 F.3d 1245, 1252 (11th Cir. 2003). "Among the factors [the Court] must consider are the defendant's intelligence, the length of his detention, the nature of the

interrogation, the use of any physical force against him, or the use of any promises or inducements by police." *Id.*, 317 F.3d at 1253 (citations omitted).

During the Rule 3.850 evidentiary hearing, Petitioner's trial counsel testified that Petitioner "was not of limited intelligence" and had experience with law enforcement and the court system (Doc. 17-3, docket p. 221). Moreover, Petitioner was not detained or in custody when speaking with Ms. Martinez, did not have to talk to her, and could hang up the telephone or walk away from her at any time. And there is no allegation or indication that either she or anyone else used physical force or threats to get Petitioner to confess. Although she told Petitioner she still had feelings for him and that they could reconcile their relationship if he told her the truth, that was not sufficient to overbear Petitioner's will. *See United States v. Vera*, 701 F.2d 1349, 1364 (11th Cir.1983) ("[A] mere admonition to the accused to tell the truth does not render a confession involuntary."); *United States v. June*, 312 F. App'x. 990, 991 (9th Cir.2009) ("A police officer's repeated exhortations to tell the truth do not amount to coercion."). At most, Ms. Martinez's statements to Petitioner amounted to trickery, which alone does not render a confession involuntary. *See United States v. Castandeda–Castaneda*, 729 F.2d 1360, 1363 (11th Cir.1984) (citations omitted). Accordingly, Petitioner cannot show that his attorney's performance was deficient in failing to move to suppress his videotaped confession to the police because his prior statements to Ms. Martinez were coerced.

Even if the statements to Ms. Martinez were coerced, Petitioner cannot show that counsel was deficient in failing to move to suppress his subsequent confession to the police. First, Petitioner's contention that he waived his *Miranda* rights only after the police confronted him with his statements to Ms. Martinez is belied by the record. The state post-conviction court found that the police did not confront Petitioner with those statements before he confessed (Doc. 17-3, Ex. 15, docket p. 167). The finding is supported by the transcript of the videotaped statement which reveals that the officers never mentioned the statements he made to Ms. Martinez (Doc. 17-3, Ex. 14, docket pp. 100-58).

Second, even if the officers confronted Petitioner with his statements to Ms. Martinez before his videotaped confession, and even if the statements to Ms. Martinez were obtained unconstitutionally, the confession to the officers was not unconstitutional because it was separate and apart from the statements to Ms. Martinez. Petitioner argues that his confession to the officers was unconstitutional under *Missouri v. Seibert*, 542 U.S. 600 (2004), because his pre-*Miranda* statements to Ms. Martinez tainted the voluntariness of his post-*Miranda* confession to the officers. *Seibert* holds that if police *deliberately* withhold *Miranda* warnings *during custodial interrogation* and elicit a confession, then provide *Miranda* warnings and again obtain a confession, the second, post-*Miranda* confession will be inadmissible. *Id*. at 604. *See also, e.g., United States v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006) (because "the first

two statements were not obtained in violation of *Miranda* [, since the defendant was not in custody during either interview,] the district court erred in applying *Seibert*."). But Petitioner points to no record evidence indicating such a deliberate tactic. Moreover, he has failed to establish that he was subjected to custodial interrogation before he received *Miranda* warnings. Therefore, because *Seibert* was inapplicable to the circumstances in Petitioner's case, counsel was not deficient in failing to move to suppress the videotaped confession as unconstitutionally obtained.

Petitioner has failed to demonstrate that the state court's decision is contrary to, or an unreasonable application of, clearly established federal law, or is based on an unreasonable determination of the facts. Accordingly, Ground Three warrants no federal habeas relief.

**Ground Four**

Petitioner contends that trial counsel was ineffective in failing to move to suppress Petitioner's videotaped confession because he was too intoxicated from cocaine to voluntarily waive his *Miranda* rights. He alleges that he informed counsel he had spent time in a drug and alcohol rehabilitation center, used cocaine "heavily" until the time he was arrested, and was under the influence of cocaine when he confessed to the officers.

This claim was raised in state court in Claim Three of Petitioner's Rule 3.850 motion (Doc. 17-2, Ex. 12, docket pp. 429-31). After an evidentiary hearing, the state post-conviction court denied the claim:

> In Ground Three, Defendant alleges that counsel was ineffective for failing to move to suppress his videotaped confession. The Defendant asserts that he involuntarily waived his *Miranda* rights prior to the confession due to the large amount of cocaine he had used before his arrest. Defendant claims that he repeatedly informed counsel that he was under the influence of cocaine at the time of his confession, and for that reason he requested that counsel file a motion to suppress it. Defendant contends that counsel's failure to move to suppress the confession prejudiced him because without the confession, the State would not have been able to prove its case.
>
> Being under the influence of drugs or alcohol does not affect the admissibility of a confession unless the defendant is so intoxicated as to be manic. *Lindsey v. State*, 63 So. 832, 833 (Fla. 1913). *See also DeConingh v. State*, 433 So. 2d 501, 503 n.2 (Fla. 1983); *Carter v. State*, 801 So. 2d 113, 115 (Fla. 2d DCA 2001). In *Burns v. State*, 584 So. 2d 1073, 1075 (Fla. 4th DCA 1991 ), the Fourth District Court of Appeals focuses the issue of "mania" on "whether the defendant is aware and able to comprehend in a general way what he is doing and to communicate with coherence and rationality." The court in *Burns* defines rationality as "whether the defendant's responses or communications have a contextual relationship." *Id*. Therefore, to render a confession inadmissible, it is not enough to simply be under the influence of an intoxicant, but the extent of intoxication is the limiting factor.
>
> At the hearing, Defendant failed to produce any credible testimony or evidence indicating that he was intoxicated to the point of mania at the time he confessed to the charges filed in this case. Defendant's former public defender, Jennifer Fury, testified that she watched the videotaped confession multiple times, both before and after she had been notified of Defendant's intoxication. Attorney Fury asserted that she saw no potential suppression issues, as Defendant was not slurring his words, his answers were appropriately responsive and coherent, his emotions seemed in line with the questioning, and

there were no other signs of impairment. Based on this testimony, which the Court finds credible, the Court concludes that Defendant has failed to demonstrate a plausible basis to seek suppression of his videotaped confession.

Attorney Fury further testified she believed that she had a better chance of keeping the videotaped confession from being presented during the trial under the restrictions of § 92.565, Florida Statutes, which limits the admissibility of confessions in sexual abuse cases. The record reflects that, following a hearing held under that statute on July 23, 2009, the Court deemed Defendant's videotaped confession admissible. Even so, Attorney Fury asserted that she did not want to file a frivolous motion to suppress.

The Court finds that Defendant failed to meet either prong of the *Strickland* test as it relates to Ground Three. Defendant has failed to show that Attorney Fury's performance was deficient or that there is a reasonable probability that the outcome of the proceedings would have been different had she moved to suppress the videotaped evidence. Ultimately, trial counsel cannot be deemed ineffective for failing to pursue and prevail on a meritless issue. *Tefteller*, 734 So.2d at 1020.

(Doc. 17-3, Ex. 19, docket pp. 238–39) (footnote omitted).

"It is settled that statements or confessions made during a time of mental incompetency or insanity are involuntary and, consequently, inadmissible." *Sullivan v. State of Ala.*, 666 F.2d 478, 482 (11th Cir. 1982). When assessing the voluntariness of a statement, intoxication is an appropriate factor that may be considered. *See, e.g., United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir.2008) (noting that alcohol and drug use are relevant to analysis of voluntariness of confession). However, a claim of intoxication does not necessarily render a statement involuntary. *Hubbard v. Haley*, 317 F.3d 1245, 1253–54 (11th Cir.2003) (concluding defendant's statement was freely given even though he had consumed alcohol).

27

The record does not support a conclusion that Petitioner was so impaired by cocaine that his confession was involuntary. During the evidentiary hearing on Petitioner's Rule 3.850 motion, Petitioner's trial counsel testified that she reviewed the videotaped statement "several times" looking for a "suppression issue." (Doc. 17-3, Ex. 18, docket p. 206). She watched the video again after Petitioner had told her he had used cocaine for days before the statement and had little sleep, but she still saw no basis to move to suppress the statement (*Id.*, docket p. 208). She saw that Petitioner was not slurring his speech, showed no irrational behavior, and was responding appropriately to the officers' questions (*Id.*, docket pp. 208-11). Although Petitioner was emotional and crying, counsel believed those were appropriate responses to the questions being asked and the circumstances of the case in which Petitioner committed sexual batteries on his two young daughters (*Id.*, docket pp. 210-11). Having found no basis to move to suppress the confession, counsel strategically decided to attempt to keep the confession out under § 92.565, Florida Statutes, which limits the admissibility of confessions in sexual abuse cases (*Id.*, docket pp. 215-16).

The state post-conviction court found counsel's testimony credible (Doc. 17-3, Ex. 19, docket p. 239). The state court's determination that counsel's testimony was credible is a finding of fact that is presumed correct, and this presumption can only be rebutted by clear and convincing evidence. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the

credibility findings, are presumed to be correct unless [a petitioner] rebuts the presumption by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)(1)); *see also Bishop v. Warden, GDCP*, 726 F.3d 1243, 1259 (11th Cir. 2013) ("In the absence of clear and convincing evidence, [a federal court has] no power on federal habeas review to revisit the state court's credibility determinations."); *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."). Petitioner has not rebutted the presumption of correctness by clear and convincing evidence.[5]

Counsel's testimony, accepted as credible by the state court, shows that counsel reviewed Petitioner's videotaped confession multiple times, saw nothing that indicated Petitioner's alleged use of cocaine rendered his confession involuntary, and concluded that a motion to suppress would be meritless. Accordingly, Petitioner fails to show that counsel performed deficiently on the basis alleged. *See Freeman v. United States,* 2018 WL 6318358, at *10 (11th Cir. July 31, 2018) (unpublished) ("It is well established that counsel cannot be deficient for failing to preserve or argue a meritless claim."); *Jacobs v. Sec'y Fla. Dep't of Corr.*, 2012 WL 364089, at *6 (M.D. Fla. Feb. 2,

---

[5] The Court finds that Petitioner's testimony during the Rule 3.850 evidentiary hearing that he felt paranoid and felt like "he wasn't there" during the confession (Doc. 17-3, Ex. 18, docket p. 226) is insufficient to overcome the presumption of correctness of the state post-conviction court's credibility determination.

2012) ("Trial counsel's performance cannot be deemed deficient for failing to file a meritless motion to suppress.").

Petitioner has not demonstrated that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this claim. Accordingly, he is not entitled to federal habeas relief on Ground Four.

It is therefore **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The **Clerk of the Court** shall enter judgment against Petitioner and close this case.

3. This Court should grant an application for a Certificate of Appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing.[6] Accordingly, a Certificate of Appealability is **DENIED**. And because Petitioner is not entitled to a Certificate of Appealability, he may not proceed on appeal *in forma pauperis*.

---

6 Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts:

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. . . .If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

**ORDERED** in Tampa, Florida on July 9, 2021.


WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE


Copies to:
Petitioner, *pro se*
Counsel of Record